STATE of Missouri ex rel. Burl Wilson ATKINS, (Relator), Respondent,

v.

MISSOURI STATE BOARD OF ACCOUNT-ANCY, (Respondent), Appellant.

No. 23353.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1961.

Thomas F. Eagleton, Atty. Gen., Joseph Nessenfeld, Asst. Atty. Gen., for appellant.

Neale, Newman, Bradshaw, Freeman & Neale, Jean Paul Bradshaw, O. J. Taylor, Springfield, for respondent.

BROADDUS, Justice.

Respondent, Burl Wilson Atkins, is a certified public accountant and holds certified public accountant's certificate No. 1134 issued by appellant, Missouri State Board of Accountancy. On March 4, 1960, respondent was convicted in the United States District Court of the crime of willfully and knowingly failing to make federal income tax returns to the Director of Internal Revenue for the calendar years 1956 and 1957, in violation of 26 U.S.C. § 7203.

On September 3, 1960, respondent was served with a notice of hearing to be held on October 6, 1960, to determine whether certified public accountant's certificate No. 1134 should be suspended or revoked for cause set forth in Section 326.130, subd. 2 RSMo 1959, V.A.M.S. on the ground that respondent was convicted of a misdemeanor, an essential element of which is dishonesty or fraud, alleged to be the offense aforesaid.

On September 22, 1960, respondent filed his petition in the Circuit Court of Cole County for a writ of prohibition to prevent the Missouri State Board of Accountancy from proceeding further in said matter pursuant to said notice of hearing. A preliminary writ of prohibition was granted on said date, requiring said Board to desist and refrain from conducting or attempting to conduct a hearing pursuant to said notice.

Respondent's petition for the writ, which was made part thereof, alleged that in hearing such charge said Board was exercising a judicial function without jurisdiction and in excess of its jurisdiction.

The petition alleged that the Board has jurisdiction to conduct the hearing only if the offense of which respondent was convicted is a crime, an essential element of which is dishonesty or fraud, and that as a matter of law neither dishonesty nor fraud is an essential element of the crime referred to in Section 7203, Title 26 U.S.C., of which respondent was convicted.

The petition alleged that for the foregoing reason, the notice of hearing affirmatively shows on its face the Missouri State Board of Accountancy has no jurisdiction or is acting in excess of its jurisdiction in conducting the hearing on the ground aforesaid, and that there is no way to amend said notice of hearing in order to confer said jurisdiction on said Board.

Appellant, Missouri State Board of Accountancy, filed a motion to dismiss and to dissolve the preliminary writ of prohibition. Said motion alleged that the Board has jurisdiction to proceed with the hearing to determine whether respondent has been convicted of the crime alleged, and stated that a conviction of the crime of willfully and knowingly failing to file an income tax return in violation of Section 7203, Title 26 U.S.C., constitutes a conviction of a crime, an essential element of which is dishonesty or fraud within the meaning of Section 326.130, subd. 1(2) RSMo V.A. M.S.

On October 17, 1960, the cause was submitted on the pleadings, and the court thereupon entered its order and judgment making the preliminary writ of prohibition permanent. After an unavailing mo-

tion for new trial this appeal was taken by the Missouri State Board of Accountancy.

■ The authority of the Missouri State Board of Accountancy to revoke or suspend respondent's certificate is limited in this case by the provisions of Section 326.-130 RSMo 1959, V.A.M.S. The Board may so revoke or suspend only if it can show that the respondent has been convicted " * * * of any crime, an essential element of which is dishonesty or fraud." It is a generally accepted doctrine that, where a statute authorizes the revocation of a license for causes enumerated, such license cannot be revoked upon any ground other than one of the causes specified. Robinson v. Missouri Real Estate Commission, 280 S.W.2d 138, (Mo. App.); State ex rel. Sbordy v. Rowlett, 138 Fla. 330, 190 So. 59, 62, 123 A.L.R. 769; In re Weathers, 159 Fla. 390, 31 So.2d 543, 544.

[2] The above statute is as simple as are the facts in this case. Dishonesty or fraud must be an *essential element* of the crime. In other words, the question is not whether this particular respondent was in fact guilty of a dishonest or fraudulent intent; rather, the question is whether the offense with which he was charged and to which he pleaded guilty is one necessitating proof of fraud or dishonesty—that is, *always* requiring that fraud or dishonesty be present as an element of the offense.

The federal misdemeanor statute in question provides:

"Any person required under this title to * * * make a return * * * who willfully fails to * * * make such return * * * at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor * * *." (26 U.S.C. § 7203).

■ Since Section 7203 is a United States Statute, we must accept the interpretation given it by the United States

courts. Urie v. Thompson, 1949, 337 U.S. 163, 174, 69 S.Ct. 1018, 93 L.Ed. 1282, 1295. "It is scarcely necessary to say that decisions of the federal courts, particularly of the United States Supreme Court, are controlling upon this court in cases based upon alleged violations of federal statutes." Illinois State Trust Co. v. Missouri Pac. R. Co., 1928, 319 Mo. 608, 5 S.W.2d 368, 370 (2). In the construction of a Federal Statute it has long been the rule in Missouri that " * * * the state courts will follow and are bound by the decisions of the federal courts." McElvain v. St. Louis & S. F. R. Co., 151 Mo.App. 126, 1910, 131 S.W. 736, 743(12).

The requirements of Section 7203 are perfectly apparent; the only proof necessary to a conviction is that the person in question: (1) is required to make a return before a certain time; and (2) he wilfully fails to make such a return within the prescribed time.

The requirement of the Federal Statutes concerning filing of individual income tax returns are contained in 26 U.S.C. § 6012. A return is required of every individual having, for a taxable year, a *gross* income of $600 or more; and such return must be filed on or before the 15th day of the fourth month following the close of the taxable year 26 U.S.C. § 6072.

Significantly, the necessity of filing a return is not determined by the amount of taxable income; rather, the *gross* income governs. For example, a taxpayer, may have received, during a particular year, a *gross* income of more than $600, and yet have actually sustained a taxable loss for the year. Nevertheless, he would be required, under the federal statutes, to file a return. It is even possible that the taxpayer may not owe any tax; he may, in fact, be entitled to a refund. And still in either event, he would be *required* to file a return before the prescribed date.

■ Fraud or dishonesty has nothing to do with this particular offense. Under

the circumstances enumerated in the preceding paragraph, the taxpayer is guilty of the misdemeanor in question if he fails to file his return on time and if such action is *wilful*. These—and these alone—are the requirements of the offense.

That these are the only elements of the offense is spelled out in Haskell v. United States, 10 Cir., 1957, 241 F.2d 790, 794(12), where it is said:

"Considered in that manner, the instructions made it crystal clear to the jury that the elements of the offense laid in the indictment which must be proved beyond a reasonable doubt were that the defendant was required to file an income tax return for the year 1951; that he did not file a return on or before September 15, 1952; and that his failure to file such a return was purposeful, deliberate and intentional and not accidental, inadvertent, or negligent."

The court did not say that the failure to file such a return must involve fraud. The language employed by the court " * * * purposeful, deliberate and intentional * * *" is merely another way of saying that the failure must be wilful.

The term "wilful", as used in this federal misdemeanor statute does not include *fraud* as a part of its meaning. In Abdul v. United States, 9 Cir., 1958, 254 F.2d 292, the defendant was charged with both felonies and misdemeanors under the Internal Revenue Laws; the misdemeanors were under the same statute here involved. The court held that the word "wilful" has a different meaning when used in felony statutes than when employed in misdemeanor statutes. The court said at page 293(1):

"The meaning of the word 'wilfully' as used in the tax statutes has been considered in a number of cases and seems to have come to rest in this Circuit, as well as others, as meaning with respect to felonies, 'with a bad purpose or evil motive.' (citing cases.) But the meaning of the word 'wil-

fully' as used in the statute defining a misdemeanor has not as yet reached such repose. The trial court in the instant case thought the word 'wilful' as used in defining a misdemeanor required a different interpretation, as evidenced by the instructions given after the jury had returned a second time asking clarification of the instructions."

The court went on to explain that the trial court had first instructed the jury that the word "wilful" meant " * * * with a bad purpose * * *" but later clarified this by telling the jury that, as to the misdemeanor counts, the word wilful: " * * * means with a bad purpose or without grounds for believing that one's act is lawful or without reasonable cause, *or* capriciously *or* with a careless disregard whether one has the right so to act * * *". (Italics ours.)

As to the felony counts the trial court had said the word meant: " * * * with knowledge of one's obligation to pay the taxes due and with intent to defraud the Government of that tax by any affirmative conduct. Further with respect to these counts, wilfulness implies bad faith and an evil motive."

The appellate court approved the instructions, saying, at page 294: "We conclude that the word 'wilful' as used in the misdemeanor statutes means something less when applied to a failure to make a return than as applied to a felony non-payment of a tax."

The Supreme Court of the United States has also pointed out in Spies v. United States, 1943, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418, 422, that the word wilful is one of many meanings: "It may well mean something more as applied to nonpayment of the tax than when applied to failure to make a return. Mere voluntary and purposeful, as distinguished from accidental, omission to make a timely return might meet the test of wilfullness."

In the enforcement of the Internal Revenue Laws, the federal courts have ex-

pressly recognized that the failure to file an income tax return as required by those laws does not necessarily involve fraud. Under 26 U.S.C. § 6653(b) it is provided that "If any part of any underpayment * * * of tax required to be shown on a return *is due to fraud,* there shall be added to the tax an amount equal to 50 percent of the underpayment." This is commonly known as the civil fraud penalty. In Jones v. Commissioner of Internal Revenue, 5 Cir. 1958, 259 F.2d 300, the appellate court was called upon to review a finding by the Tax Court that a part of the deficiency for certain years was due to fraud with intent to evade tax. The court, in discussing the Tax Court's findings of fact, stated, at page 302:

"*These findings, which alone represent the basis of the Tax Court's conclusion of fraud, show that in truth the only specific fact which is used as the basis for this conclusion was the deliberate failure to file the two tax returns which were prepared for him by his accountant.* There is no indication that the Tax Court disbelieved any of the statements of Jones or found his testimony subject to discount because it conflicted with that of other witnesses. *Under the decisions of the Supreme Court and of this Court, we do not think that such deliberate failure is enough.* (Italics ours.)

"In fact, the statutory scheme shows that Congress intended to deal with willful failure to file and with fraud in different ways. It defined the two separate offenses in separate statutes, Footnote one supra. In the landmark Spies case the Supreme Court pointed out the difference in clear terms. And we have been doing the same thing over the years. Beginning with Hargrove and coming down through Veino, we have consistently held that 'fraud implies bad faith, intentional wrongdoing and a sinister motive. It is never imputed or presumed and the court should not sustain findings of fraud upon circumstances which at the most create only suspicion.'"

After quoting the Tax Court's statements concerning the failure to file the returns, the court said, at page 303:

"The quoted statement shows merely that the taxpayer deliberately held the documents and did not file them. He had been told by his auditors that this would subject him to penalty under Section 291(a). *That the information would have been helpful to the Government does not tend to sustain the charge that the taxpayer failed to file the prepared returns with a fraudulent intent, and no support for such a conclusion is found in the authorities.*" (Italics ours.)

The Tax Court had further found that the reason the taxpayer had failed to file his tax returns was that he "* * * did not want to use his money or have it taken to pay the taxes * * * because he chose to use his money instead for other purposes, including the expansion of his business. * * * He made payments of $32,086.00 in 1948 and 1949 on a home which he was purchasing." In reviewing this finding the appellate court said:

"The Commissioner, in his presentation before us, dwells upon these findings as if they convicted petitioners of patent perfidy and intentional wrongdoing. Leaving aside the fact that the house had been purchased before the first tax return was due and that the payments had to be made to avoid its sacrifice, the argument is utterly lacking in force that a citizen can be convicted of intentional wrongdoing with specific intent to evade his taxes because he elects to use his money, much of it borrowed, for pressing business needs * * * 'giving the squeaking wheel the grease,' as petitioner expresses it, i. e., to save his business and his home in preference to turning it over to the Government even though he knows he owes taxes."

The court then reversed the Tax Court's judgment insofar as it included a 50 percent fraud penalty. If fraud or dishonesty is a necessary element of the offense of failing to file an income tax return, as ap-

pellant contends here on this present appeal, then certainly the *Tax Court's* decision in the Jones case would not have been reversed. But it was reversed and reversed squarely on the ground that wilful failure to file a timely return "does not tend to sustain the charge that the taxpayer failed to file the prepared returns with a fraudulent intent."

In the case of In re Hallinan, 43 Cal.2d 243, 272 P.2d 768, 774, the Supreme Court of California, after reviewing many federal decisions, announced that: "The foregoing cases establish that fraud is not an essential element of the offense proscribed by section 145(b)."

The federal authorities leave no uncertainty about this issue; the offense of which this petitioner was convicted does not necessarily, and in all cases, involve fraud. As a matter of fact, the United States Supreme Court has said that even the attempt to *evade* income taxes (a felony under 26 U.S.C. § 7201) does not necessarily involve fraud. United States v. Scharton, 1952, 285 U.S. 518, 52 S.Ct. 416, 76 L.Ed. 917.

But since the Missouri State Board of Accountancy is also authorized to revoke respondent's license if the offense of which he was convicted involves *dishonesty,* we must consider whether the failure to file a federal income tax return, within the time prescribed by law, *necessarily* involves dishonesty.

Appellant in attempting to show that the offense involves dishonesty has relied upon various dictionary definitions of this term. For instance in its brief appellant relies upon the definition contained in Black's Law Dictionary (4th Edition): "Disposition to lie, cheat, or defraud; untrustworthiness; lack of integrity." Then upon Webster's New International Dictionary (2d Edition): "Want of honesty, probity or integrity in principle; want of fairness and straightforwardness; disposition to defraud or betray, faithlessness."

Returning again to the simple requirements of the statute in question, how can it be said, *by any line of reasoning,* that dishonesty is always an element of this offense? The crime is obviously one which is *malum prohibitum,* not *malum in se.* As we have said earlier, the requirement that a return be timely filed depends upon the amount of one's *gross* income, not upon his tax liability. In Elwert v. United States, 9 Cir., 1956, 231 F.2d 928, 932 (footnote 2), the court said:

"*A prosecution for wilful failure to file a return may be maintained where there is no tax due.* But no prosecution for wilful attempts to evade or defeat a tax is possible unless there is some tax due." (Italics ours.)

The Supreme Court of the United States has also said that tax liability is immaterial under this statute (Spies v. United States, 317 U.S. 492, 63 S.Ct. 367, supra, 87 L.Ed. loc. cit. 421.) "Hence the willful failure to make a return, keep records, or supply information when required, is made a misdemeanor, without regard to existence of a tax liability." (Italics ours.) As pointed out above, a taxpayer may have in fact made earlier payments by means of estimated tax returns, or may have a refund due from previous years, so that the Government in fact is indebted to him; yet, if he fails to file his tax return within the time prescribed by federal statutes, the offense involved herein has been committed. How can it be said that there is necessarily and always a disposition on such a man's part "to lie, cheat or defraud? How can it be said that he is necessarily and always "untrustworthy and lacks integrity?" How can it be said that he is necessarily and always wanting in honesty, probity or integrity or principle or has a disposition to defraud or betray or is faithless? Dishonesty is clearly a state of mind. The only state of mind involved in the offense of failure to make a timely filing of an income tax return is the state of mind in which the taxpayer *knows* that he should so file. It occasionally occurs that a taxpayer, be-

cause of religious and moral convictions, refuses to file the income tax return required by statute or to pay the tax properly computed thereon. Can it be said that such a person *necessarily and always* is dishonest? Of course not. And yet he would be guilty of this federal misdemeanor if his gross income was as much as $600 and he failed to file a *timely* return.

Since the return is required to be filed within a period of three and one-half months following the close of the taxable year, the taxpayer may well know that the return is required, but, for reasons of his own, may conclude that he will postpone the filing for a period of time. Even though the taxpayer in question may have every intention of filing the return and at that time paying the entire tax due together with interest, it must be admitted that, under this statute, he is guilty of the offense proscribed. But this is not to say that he is *necessarily* dishonest.

Appellant's brief agrees that dishonesty is a *subjective* matter, saying: "Thus it is evident that dishonesty is differentiated and distinguished from honest conduct by the existence of a bad motive. When there is a bad motive or evil intent, the conduct is dishonest."

Turning again to the federal cases on federal income tax law, a lack of honesty implies a misrepresentation as to the amount owed the Government. For obviously one cannot cheat the Government out of what is owed if in fact nothing is owed. It is, therefore, obvious that dishonesty is not *necessarily and always* present in an offense which is in no way made to depend upon tax liability.

If, as the Supreme Court said in the Spies case, the misdemeanor may be committed *without regard to tax liability*, it is evident that "bad motive", which appellant equates with "dishonesty", is in fact not a *necessary* element of the offense proscribed in the misdemeanor section.

■■ Appellant contends that it acts in an administrative capacity in granting or revoking certificates, and is therefore not amenable to prohibition. The contention lacks merit. The use of the writ of prohibition is not confined to courts alleged to be exceeding their jurisdiction. It is frequently used to prevent boards, commissions, and other public bodies exercising quasi judicial powers from the doing of unauthorized acts or acts in excess of the authority vested in them. State ex rel. Bates v. Remmers, 325 Mo. 1175, 30 S.W.2d 609, 611; State ex rel. United States Fidelity & Guaranty Co. v. Harty, 276 Mo. 583, 208 S.W. 835.

In the present instance the authority of the Missouri Board of Accountancy is sharply defined by the statutes. As applied to this proceeding, those statutes (Section 326.130, subd. 1(2) RSMo 1959, V.A.M.S.) limit the jurisdiction of the Board to a determination of whether the respondent was convicted of a misdemeanor " * * * an essential element of which is dishonesty or fraud." Surely such a determination can only be a judicial determination; surely, also, a proceeding in which such a determination is to be made is a judicial proceeding, to which the writ of prohibition is applicable

■ Appellant also urges that prohibition is not here applicable because the statutes confer a right of appeal. But our courts have held the right of appeal must be an *adequate remedy* before its availability will preclude resort to prohibition. State ex rel. Templeton v. Seehorn (Mo. App.) 208 S.W.2d 789, 794. (Citing cases.)

In the present case, it must be remembered that the Missouri State Board of Accountancy was dealing with one of the respondent's most precious possessions— his right to practice his profession; and, in fact, the Board was seeking to take away his very means of livelihood, for without the right to practice as a Certified Public Accountant respondent will have no means

of employment. To take away this right, even temporarily, could only result in irreparable injury to respondent.

■ True, the respondent has the right of appeal; but, pending such an appeal he might well lose his right to practice. For the statute does not provide for a mandatory stay of the Board's order pending appeal; instead, it is provided in Section 326.130, subd. 3 that the Board may, in its discretion, permit the "accused" to practice pending the appeal. Such a right of appeal is not an adequate remedy, and, under the particular circumstances evident in this case, the trial court was clearly justified in granting the writ of prohibition to prevent the Board's exceeding its jurisdiction.

The judgment is affirmed. All concur.